UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| KYM N.-W., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:18-cv-04212-SLD-JEH |
| | ) | |
| ANDREW SAUL,[1] | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

Before the Court are Plaintiff Kym N.-W.'s Motion for Summary Judgment, ECF No. 9;

Defendant Commissioner of the Social Security Administration Andrew Saul's ("the

Commissioner") Motion for Summary Affirmance, ECF No. 11; Magistrate Judge Jonathan

Hawley's Report and Recommendation ("R&R"), ECF No. 13, recommending that the Court

deny Kym's motion, grant the Commissioner's, and affirm the Commissioner's decision; and

Kym's objection to the R&R, ECF No. 14.  For the reasons that follow, the objection is

OVERRULED, the R&R is ADOPTED, the Motion for Summary Judgment is DENIED, and the

Motion for Summary Affirmance is GRANTED.

## BACKGROUND[2]

### I.  Procedural History

In March 2014, Kym applied for disability insurance benefits, alleging disability

beginning August 30, 2013.  Her application was denied initially and on reconsideration.  At

Kym's request, a hearing was held before an administrative law judge ("ALJ") on May 5, 2016.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the new Commissioner is substituted for his predecessor as Defendant.  The Clerk is directed to update the docket accordingly.
[2] Judge Hawley's R&R provides a detailed summary of the background of this case and the ALJ's decision.  *See* R&R 1–10.  The administrative record can be found at ECF No. 6.  Citations to the record take the form: R. __.

The ALJ denied Kym's application for benefits in a decision dated July 15, 2016. The Appeals Council then remanded the case for the ALJ to evaluate Kym's treating physician's opinion and further consider Kym's stated limitations. In the meantime, Kym filed an application for supplemental social security benefits. The ALJ consolidated Kym's claims and held another hearing on December 19, 2017. She denied both claims in a decision dated February 27, 2018. The Appeals Council denied review. The February 27, 2018 decision, therefore, became the Commissioner's decision. *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). Kym then sought judicial review pursuant to 42 U.S.C. § 405(g) and 42 U.S.C § 1383(c)(3). Compl., ECF No. 1. She filed a motion for summary judgment and the Commissioner filed a motion for summary affirmance. The matter was referred to Judge Hawley for a recommended disposition and he entered his R&R on November 5, 2019. Kym timely filed an objection, to which the Commissioner responded, Resp. Objection, ECF No. 16.

## II.    ALJ Decision

The ALJ conducted the standard five-step sequential analysis set forth in 20 C.F.R. § 404.1520(a)(4),[3] concluding that Kym was not disabled. At step one, she determined that Kym had not engaged in substantial gainful activity since August 30, 2013, the alleged date of onset. R. 16. At step two, she determined that Kym had the following severe impairments: degenerative disk disease of the lumbar spine status-post surgery, degenerative disk disease of the cervical spine, breathing disorder, and status-post left arm/shoulder injury. *Id.* at 16–17. At step three, the ALJ determined that none of Kym's impairments met or equaled the criteria of an

---

[3] The standards for establishing a disability to receive disability insurance benefits and supplemental security income are materially the same. *Compare* 20 C.F.R. §§ 404.1501–404.1576 (disability insurance benefits), *with id.* §§ 416.901–416.976 (supplemental security income). For efficiency, the Court will cite only to the disability insurance benefit regulations.

impairment listed in 20 C.F.R. Part 404, Subpart 4, Appendix 1. *Id.* at 17–18. Next, the ALJ made the following residual functional capacity ("RFC") assessment:

> [T]he clamant has the [RFC] to perform sedentary work [i.e., she can lift no more than 10 pounds and she can stand and/or walk no more than 2 hours and can sit for 6 hours, each in an 8-hour workday, but has no limitation on the ability to sit[]] . . . except she can never climb ladders, ropes or scaffolds, but can occasionally climb ramps and stairs and can occasionally balance, stoop, kneel, crouch and crawl. In addition, she must avoid concentrated exposure to unprotected heights and hazardous machinery. She must further avoid concentrated exposure to respiratory irritants such as dusts, fumes, odors, gases and poor ventilation.

*Id.* at 18. At step four, the ALJ determined that Kym did not have the RFC to perform her past relevant work. *Id.* at 24. Proceeding to step five, the ALJ, relying on the testimony of a vocational expert, determined that there were jobs that existed in significant numbers in the national economy that Kym could perform. *Id.* at 24–25. Specifically, Kym could perform the requirements of pari-mutuel ticket checker, telephone quote clerk, and document prep clerk. *Id.* at 25.

## DISCUSSION

### I.     Legal Standards

When a magistrate judge considers a pretrial matter dispositive of a party's claim or defense, he must enter a recommended disposition. Fed. R. Civ. P. 72(b)(1). Parties may object within fourteen days of being served with a copy of the recommended disposition. *Id.* 72(b)(2). The district judge considers de novo the portions of the recommended disposition that were properly objected to, and may accept, reject, or modify the recommended disposition, or return it to the magistrate judge for further proceedings. *Id.* 72(b)(3). The district judge reviews the unobjected portions of the recommendation for clear error only. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

The court reviews a decision denying benefits to determine only whether the ALJ applied the correct legal standard and whether substantial evidence supports the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quotation marks omitted). The ALJ does not have "to provide a complete and written evaluation of every piece of testimony and evidence, but must build a logical bridge from the evidence to his conclusion." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (quotation marks omitted). On review, the court cannot reweigh the evidence, decide questions of credibility, or substitute its own judgment, but must "nonetheless conduct a critical review of the evidence." *McKinzey*, 641 F.3d at 889.

## II.    Analysis

Kym's objection essentially restates the arguments made in support of her Motion for Summary Judgment, *see* Objection 1 (referring to the entirety of her brief in support of the motion for summary judgment), so the Court will consider her motion de novo.[4] *See* Fed. R. Civ. P. 72(b)(3). Kym makes two arguments: first, that the ALJ's assessment of her subjective complaints was patently wrong, Mem. Supp. Mot. Summ. J. 6–13, ECF No. 9-1; and second, that the ALJ failed to give the opinion of her treating physician proper weight, *id.* at 13–18. In response, the Commissioner argues that "[t]he ALJ properly evaluated [Kym's] subjective symptoms" and the Court must give the ALJ's determination great deference, Mem. Supp. Mot. Summ. Affirmance 17, ECF No. 12; and that "the ALJ's decision to give only some weight to [the treating physician's] opinion was supported by substantial evidence," *id.* at 13.

---

[4] Kym additionally argues that the "Commissioner's arguments constitute forbidden after-the-fact speculation," Objection 1, but fails to specify which of the Commissioner's arguments she is referring to. The Court will not address this undeveloped argument.

### a. Subjective Symptom Analysis

Social Security Regulation ("SSR")[5] 16-3p, 2017 WL 5180304 (Oct. 25, 2017), sets forth a two-step analysis an ALJ must follow when evaluating a claimant's subjective symptoms. First, the ALJ must consider whether the individual has a medically determinable impairment "that could reasonably be expected to produce an individual's symptoms." *Id.* at *3. If she does, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit [the] individual's ability to perform work-related activities." *Id.* At the second step, the ALJ must consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. Even if a court would assess the claimant's subjective symptoms differently, it "overturn[s] an ALJ's subjective symptom assessment 'only if the decision is patently wrong, meaning it lacks explanation or support,'" *Ronald B. v. Saul*, No. 18 C 5881, 2019 WL 3778070, at *5 (N.D. Ill. Aug. 12, 2019) (quoting *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017)), or "if the ALJ fails to build an 'accurate and logical bridge' between the evidence and her conclusions," *id.* (quoting *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006)).

Kym makes numerous arguments as to why the ALJ's assessment was patently wrong, but none is persuasive. First, she argues that by stating that "the record is not consistent with complete inability to work," R. 21, the ALJ imposed a requirement—that she prove an inability to work—not found in Social Security regulations. Mem. Supp. Mot. Summ. J. 8–9. But the

---

[5] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000) (citation and quotation marks omitted); *see* 20 C.F.R. § 402.35(b)(1).

Court does not read the statement to impose such a requirement. The ALJ conducted her analysis in accordance with SSR 16-3p. First, she found that Kym's medically determinable impairments could reasonably be expected to produce the symptoms Kym alleged. R. 19–20. Second, she concluded that Kym's "statements concerning the intensity, persistence and limiting effects of these symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 19. She then explained how she came to that conclusion. She detailed the medical records and the lack of objective findings to support Kym's statements, *id.* at 19–21, other injuries Kym suffered which could explain her symptoms, *id.* at 21, Kym's course of treatment, *id.* at 21–22, Kym's daily activities, *id.* at 22, and Kym's statements about her abilities throughout the record, *id.* at 22–23. The allegedly problematic statement came as the ALJ began to discuss the evidence of record that was not consistent with Kym's statements about her symptoms. It was used to frame the remainder of the analysis, not to indicate a standard that Kym failed to meet.

Second, Kym argues that the ALJ improperly discredited her statements about her pain and limitations because she did not attend a pain clinic, discontinued use of her TENS unit, and discontinued physical therapy without exploring the reasons for these actions. Mem. Supp. Mot. Summ. J. 9–10. An ALJ may consider a claimant's failure to follow a treatment plan or failure to seek treatment, but before drawing a negative inference, she must "explore the claimant's reasons for the lack of medical care." *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012). The ALJ did not find Kym's subjective symptoms unsupported because of her failure to attend a pain clinic. The only potential reference the Court can find to Kym failing to attend a pain clinic is the ALJ's statement that Kym was discharged from occupational therapy "because she was reportedly going to pursue cortisone injection therapy." R. 22. There is no indication, however,

that the ALJ found that Kym did not actually pursue such therapy, let alone that the ALJ drew a negative inference from her failure to do so.

Likewise, the Court finds Kym's suggestion that the ALJ discredited her subjective statements because she discontinued physical therapy unavailing. Nothing in the decision suggests the ALJ found that Kym decided to discontinue going to physical therapy and drew a negative inference from that. Instead, the ALJ identified the reasons that Kym was discharged from each course of therapy. She noted that Kym was sent to physical therapy in early 2014, which was well-tolerated, but that "inability to correct cane use with the wrong hand and intermittent setbacks outside of treatment resulted in her discharge without meeting most of the therapy goals." *Id.* at 19. Then the ALJ noted that Kym was referred to physical therapy for neck and arm pain in late 2015 and that she was discharged "at maximum medical improvement . . . in early December 2015," having met two of three goals. *Id.* at 20. Finally, the ALJ noted that Kym was referred to occupational therapy for her left arm in 2017 and "showed steady, albeit slow, improvement" and was discharged when she reported she was going to pursue injection therapy. *Id.* at 22. The ALJ determined that Kym's therapy records showed that her treatment "was not totally successful, but for reasons beyond the treatment." *Id.* at 21. Those reasons included: Kym's significant other popped her back harder than normal, she sat on a wooden chair for more than four hours, she fell on ice, she continued doing household and farm chores, and she tended to overuse her left arm doing woodworking and painting. *Id.* at 21–22.

The ALJ did find that Kym "use[d] a TENS unit, which she acknowledged was effective, but allowed it to run out of medication and stopped using it voluntarily." *Id.* at 21. This is not supported by the record. The ALJ relied on a physical therapy record which states that Kym "has a TENS unit but has not used it recently due to running out of patches." *Id.* at 498. The

ALJ seems to have inferred both that Kym stopped using the TENS unit entirely and her pain must not have been severe if she let it run out of medication. But the cited physical therapy record also indicates that Kym described her leg pain as feeling "like she is being electrocuted." *Id.* Moreover, records indicate that Kym continued using her TENS unit after the time she ran out of patches. *See, e.g.*, *id.* at 620. The record, therefore, does not support the finding that she voluntarily stopped using the unit because her pain was not severe. However, considering the remainder of the ALJ's analysis—in which she cites to substantial evidence to support her conclusion that the record did not fully support Kym's statements about her symptoms and limitations—this one unsupported statement is harmless. *See McKinzey*, 641 F.3d at 890–91 (upholding the ALJ's credibility determination even where the ALJ made some mistakes because the ALJ cited to other substantial evidence to support her conclusion); *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) ("Not all of the ALJ's reasons must be valid as long as *enough* of them are . . . ."); *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) (declining to overturn an ALJ's credibility determination even though it was "not flawless").

Third, Kym argues that the ALJ's statement that her falls were due to bad weather is "not supported by the record." Mem. Supp. Mot. Summ. J. 10. Kym testified that she fell three or four times a week, R. 77, though only approximately six are documented in the medical records. Kym suggests that the ALJ cherry picked the record to support finding that her falls were due to bad weather. Mem. Supp. Mot. Summ. J. 11. The ALJ stated that "[t]he claimant has reported numerous falls with complaint of left lower extremity radiculopathy," but noted that "two falls that occurred during [Kym's] 2014 PT took place in inclement weather conditions" and that the May 2015 fall occurred when she was bucked off a horse she was riding. R. 21. The Court does not read this statement to suggest that the ALJ was ascribing all of Kym's falls to inclement

weather, as opposed to her impairments.[6]  This argument provides no reason to overturn the ALJ's subjective symptom assessment.

Fourth, Kym argues that the ALJ "erred in finding [Kym's] daily activities indicate she can perform work activity" because "[i]t is error to equate the ability to perform limited daily activities with the ability to perform substantial gainful activity."  Mem. Supp. Mot. Summ. J. 11.  An ALJ can certainly consider a claimant's daily activities as part of her subjective symptom evaluation.  *See* 20 C.F.R. § 404.1529(c)(3)(i); SSR 16-3p, 2017 WL 5180304, at *7.  But she "must explain perceived inconsistencies between a claimant's activities and the medical evidence."  *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011).  And the Seventh Circuit has repeatedly "urged caution in equating [daily living] activities with the challenges of daily employment in a competitive environment."  *Beardsley v. Colvin*, 758 F.3d 834, 838 (7th Cir. 2014).

The Court disagrees that the ALJ equated Kym's daily activities with an ability to work.  The ALJ adequately explained what she perceived as inconsistencies.  The ALJ recited Kym's testimony about her daily activities, including that she does light housework with breaks, supervises her son, prepares convenient meals, and cares for herself, but needs some help with socks and shoes.  R. 22.  But the ALJ also noted that there were examples in the record of Kym sitting for long periods of time without getting up, going horseback riding, doing household and farm chores, and painting and woodworking.  *Id.*  The ALJ found that these "illustrate that the

---

[6] Kym also notes that "Dr. Arnold indicated a cane was medically necessary."  Mem. Supp. Mot. Summ. J. 11.  The import of this to Kym's argument is unexplained.  But the Court notes that the ALJ thoroughly discussed the evidence about Kym's cane usage.  The ALJ noted Kym's testimony that she uses a cane all the time and that a cane was prescribed, but noted that there was no record of a prescription for a cane.  R. 22.  Kym does not point the Court to such a prescription and the Court could not find one in the record.  The ALJ also noted other evidence that undermined Kym's testimony that she needed to use a cane all the time.  *Id.*  For instance, Kym reported at a breast examination in 2016 that she could walk a city block without a problem.  *Id.* at 1028.  At an occupational therapy evaluation in 2017, the therapist noted that Kym was independent with ambulation.  *Id.* at 1024.  Moreover, at an appointment regarding a mass on her neck, Kym reported that she used a cane as needed.  *Id.* at 1008.

claimant is capable of functioning to the extent determined in this decision." *Id.* The ALJ also noted that an occupational therapist reported in February 2017 that Kym was independent with activities of daily living and homemaking. *Id.* (citing *id.* at 1024).

Lastly, Kym argues that the ALJ committed legal error when she found that Kym's pain complaints were not credible due to a lack of objective evidence. Mem. Supp. Mot. Summ. J. 13. An ALJ is not permitted to "disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." SSR 16-3p, 2017 WL 5180304, at *5. But an ALJ is certainly allowed, in fact is required, to consider the objective medical evidence. *Id.* at *4 ("In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence . . . ."); *id.* at *5 ("[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms . . . ."). Here, the ALJ did not disregard Kym's testimony solely because of a lack of objective evidence. Instead, she considered the entire record, as explained above.

### b. Treating Physician Opinion

If an ALJ finds that a treating source's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2). If the treating source's opinion is not given controlling weight, the amount of weight it is given is determined by: the length of the treatment relationship and frequency of examination, *id.* § 404.1527(c)(2)(i); the nature and extent of the treatment relationship, *id.* § 404.1527(c)(2)(ii); how much relevant evidence the source provides to support its opinion, *id.*

§ 404.1527(c)(3); the consistency of the opinion with the record as a whole, *id.* § 404.1527(c)(4); and the source's specialization, *id.* § 404.1527(c)(5). "If the ALJ discounts the physician's opinion after considering these factors, [the court] must allow that decision to stand so long as the ALJ minimally articulate[d] his reasons—a very deferential standard that [the Seventh Circuit has], in fact, deemed lax." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (second alteration in original) (quotation marks omitted).

Here, Kym's treating provider, Dr. Arnold, provided a medical source statement. R. 993–96. He opined that she could walk only one-fourth of a city block without rest or severe pain, could sit for only 45 minutes at a time and for only two hours of a workday, could not stand for any length of time, would need to walk around every 30 minutes for 5 minutes, and could lift no more than ten pounds. *Id.* at 994–95. He also opined that she would be absent from work more than four days a month. *Id.* at 996. The ALJ gave Dr. Arnold's opinion some weight insofar as it was consistent with the assessed RFC, but no weight otherwise because it was not consistent with the record. *Id.* at 23. Specifically, she found that Dr. Arnold's opinion was "not consistent with [his] objective examination results," there was no testing to support his opinion that she suffered from radiculopathy, and there was not medically determinable support for his "very severe" limitations on sitting, walking, and standing and his high estimate of absences. *Id.*

Kym's primary argument is that the ALJ erred in concluding that Dr. Arnold's opinion was inconsistent with the record. *See* Mem. Supp. Mot. Summ. J. 14–17. It was certainly permissible for the ALJ to consider whether Dr. Arnold's opinion was consistent with the record. *See* 20 C.F.R. § 404.1527(c)(4). And it is not the Court's duty to reweigh the evidence or substitute its judgment for that of the Commissioner. *See Butera v. Apfel*, 173 F.3d 1049, 1055

(7th Cir. 1999). The Court must affirm the ALJ's determination that the opinion conflicted with the record so long as she articulated her reasons and they are supported by substantial evidence.

The ALJ discussed the following in determining that the record lacked significant objective evidence to support Dr. Arnold's opined limitations, R. 21: between September 2013 and December 2015, lumbar spine examinations consistently indicated minimal lumbar findings or reported no soft tissue swelling and no motor disturbances, *id.* at 550, 551, 553, 556, 559, 599–634; an examination after a fall down a flight of stairs in July 2014 revealed normal ranges of motion and strength, *id.* at 591; in May 2015, Kym described her back pain as moderate and noted that her treatment provided moderate relief, *id.* at 617; in December 2015, she described her cervical spine pain as mild and noted that treatment provided moderate relief, *id.* at 626; and a January 2014 lumbar spine MRI was less than conclusive, but showed postsurgical changes of anterior hardware fusion at L4-S1, no central stenosis, and questionable mild bilateral foraminal narrowing at L5-S1, *id.* at 565.

The only argument that Kym makes with respect to this evidence is that the ALJ mischaracterized the MRI results. Mem. Supp. Mot. Summ. J. 16. She argues that "[t]he ALJ assumes this MRI indicates there is nothing wrong with [her] back and that she lied about having bulging dis[k]s." *Id.* First, the ALJ did not find that there was nothing wrong with Kym's back. She acknowledged Kym had severe impairments and limited Kym to sedentary work. But she found that Kym was not as limited as she claimed, based in part on a lack of objective evidence to support severe limitations. Second, the Court finds no indication that the ALJ implied that Kym lied about having bulging disks. The ALJ noted that Kym had "reported that there was past MRI evidence of 2 bulging dis[k] in the neck, [but that] there is no objective evidence in the record to verify such." R. 21. The ALJ was referring to a September 2015 record, which states

that Kym told Dr. Arnold that she had an MRI two years prior in Peoria and "was told [she] has a bulging disk in her neck." *Id.* at 623. But the ALJ did not imply that Kym was lying or draw any negative inferences from this report; she was merely indicating that, despite the reference, there was no evidence of bulging disks in Kym's neck. Kym also argues that the ALJ improperly left out part of the 2014 MRI results which show that there was evidence of bulging disks in the lumbar spine. Mem. Supp. Mot. Summ. J. 16–17. The MRI report does state as a finding that there was "minimal posterior disk bulging" at L4-L5. R. 564. But the doctor interpreting the results did not list that in his impression, which is what the ALJ recited in her decision. *Compare id.* at 565, *with id.* at 564.

The ALJ further stated that even though Dr. Arnold found that Kym had a limited range of motion in her cervical spine, he diagnosed her condition as somatic, as opposed to physical. *Id.* at 21 (citing *id.* at 1040). She also noted that Dr. Arnold prescribed Kym hydrocodone and morphine "largely on the basis of the claimant's subjective complaints." *Id.* Kym argues that, by saying this, "[t]he ALJ questions Dr. Arnold's judgment in prescribing narcotic medications" to her. Mem. Supp. Mot. Summ. J. 15. The Court does not read the ALJ's statement as an indictment of Dr. Arnold's judgment; instead, the ALJ was merely highlighting her belief that there was a lack of objective evidence to support Dr. Arnold's opinion.

The ALJ also found that Kym's 2016 and 2017 records contained insignificant objective findings, citing to two records that reported no abnormalities in her back or upper extremities. R. 21 (citing *id.* at 1026, 1042). Kym argues that the ALJ mischaracterizes these records.[7] Mem.

---

[7] The ALJ also noted that x-rays of Kym's left shoulder following her May 2015 fall from a horse were negative. R. 21. Kym argues that this is irrelevant because she never claimed that she had a fractured shoulder. Mem. Supp. Mot. Summ. J. 16. Even if true that the x-ray results are irrelevant to whether there is objective evidence to support her symptoms, the Court does not believe the ALJ placed any undue weight on the fact that she suffered no fractures. She merely noted it. *See* R. 21 ("It is also noteworthy at this juncture that left shoulder x-rays following her fall from her horse in May 2015 were negative."). Kym further argues that the emergency room records from after her fall contain objective evidence supporting her claims of severe pain. Mem. Supp. Mot. Summ. J. 16. But

Supp. Mot. Summ. J. 15–16.  The Court agrees.  On June 3, 2016, Kym complained of lumbar spine pain, but the record does not indicate that Dr. Arnold conducted an examination of her lumbar spine.  R. 1042.  The ALJ should not have concluded, then, that the record showed there were no abnormalities in Kym's back.  Likewise, the record from February 17, 2017 merely states that Kym's right shoulder was examined, *id.* at 1026, so the ALJ should not have concluded that the record showed no abnormalities in either of Kym's upper extremities or her back.  Again, however, this one mistake does not require remand in light of the ALJ's otherwise well-supported decision.  *See, e.g.*, *McKinzey*, 641 F.3d at 891.

The ALJ at least minimally articulated her reasons for discounting Dr. Arnold's opinion: that it was not consistent with his own objective examination results, was inconsistent with the record, and was insufficiently supported.  R. 23.  And she cited substantial evidence in support of these reasons.  The Court must uphold the ALJ's determination.[8]

## CONCLUSION

Accordingly, Plaintiff Kym N.-W.'s objection, ECF No. 14, is OVERRULED; the Report and Recommendation, ECF No. 13, is ADOPTED; the Motion for Summary Judgment, ECF No. 9, is DENIED; and the Motion for Summary Affirmance, ECF No. 11, is GRANTED.  The Commissioner's decision in this matter is AFFIRMED.  The Clerk is directed to enter judgment and close the case.

---

considering that these records reflect Kym's state shortly after being bucked off a horse onto a gravel road, *see* R. 700, they are not particularly probative of whether she suffered from severe pain on a regular basis.

[8] Kym also makes a perfunctory argument that "[t]he ALJ erred in failing to base her RFC on medical evidence," but instead basing her RFC on "giving the claimant the benefit of the doubt."  Mem. Supp. Mot. Summ. J. 17 (quotation marks omitted).  This is easily rejected.  As she was required to, the ALJ considered all the evidence in the record in forming the RFC.  She weighed the evidence (including Kym's testimony and statements about her pain) and determined that although it did not support finding that Kym was as limited by pain as she claimed, it supported finding that she did have severe enough limitations to warrant limiting her to sedentary work.  This was permissible.  *Cf. Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010) ("It was because of and not in spite of Castile's testimony that the ALJ limited her to a more restrictive residual functional capacity finding than any physician on the record.").

Entered this 5th day of February, 2020.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE